**SIGNED THIS: April 08, 2008**

_____

**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In Re                          )
                               )    In Bankruptcy
EDWARD SCOTT NIEDERHAUSER and )
MICHELLE LYNN NIEDERHAUSER,    )    Case No. 06-70930
                               )
          Debtors.            )

## O P I N I O N

This matter comes before the Court on a Motion filed on February 20, 2008, by John H. Germeraad, Chapter 13 Trustee ("Trustee"), seeking an order of turnover against the Niebuhr Law Office, Karl R. Niebuhr and/or Leann M. Niebuhr ("the Niebuhrs") in the amount of $35.61.

Edward Scott Niederhauser and Michelle Lynn Niederhauser ("Debtors") filed their voluntary Chapter 13 petition on July 20, 2006. Debtors were represented by the Niebuhrs. Debtors' Fourth

-1-

Amended Chapter 13 Plan was confirmed on April 9, 2007. The Order of Confirmation provided for payment of attorney fees to the Niebuhrs in the amount of $1,954. On February 7, 2008, Debtors filed a Motion to Dismiss their case. The following day, Trustee filed an Objection to Debtors' Motion, asserting that he opposed dismissal of the case unless or until the Niebuhrs returned $35.61 to the Trustee. Trustee contends that the Niebuhrs received $35.61 too much toward payment of their attorney fees, and unsecured creditors correspondingly received $35.61 too little in funds distributed by the Trustee during the bankruptcy. Trustee refers specifically to this Court's Standing Order dated December 7, 2005 ("Standing Order"), which provides in pertinent part as follows:

> Allowed attorney fees shall be paid through the plan. However, the attorney may receive all or part of the allowed fees prior to the filing of the case, provided those fees are deducted from the total allowed fees to be paid through the confirmed plan. The rate of payment of the fees through the plan shall not exceed the lesser of (1) 50% of the funds distributed by the trustee afer payment of administrative expenses (including the trustee's fee) or (2) $250 per month, unless the Chapter 13 trustee recommends and the Court approves a larger monthly payment amount.

Standing Order *at* p. 1.

On February 8, 2008, the Court entered an Order allowing Debtors' Motion to Dismiss. On February 20, 2008, Trustee filed his Motion for Turnover with respect to the subject $35.61. On February 21, 2008, the Court entered an Order requiring the Trustee to file a memorandum of law setting forth any relevant statutory or

case law authority which supports his Motion.  The Niebuhrs were given until March 31, 2008, to file a response.  No response was filed.

In his Memorandum of Law, Trustee argues that Section 105(a) of the Bankruptcy Code authorizes the Court to require turnover. Section 105(a) provides as follows:

> (a)  The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. §105(a).

A bankruptcy court has "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of of such case, and of property of the estate[.]"  28 U.S.C. §1334(e).[1]  This broad jurisdictional authority conveyed by §1334(e) is reflected in part by §105, which gives the court the power to "issue any order . . . that is necessary or appropriate to carry out the provisions of (title 11)."  11 U.S.C. §105(a); 2 *Collier on Bankruptcy* §105.04[3] (15th ed. rev.).

It is clearly within the equitable powers of the Court

---

[1]
    Actually, §1334(e) gives this jurisdiction to the "district court," but under the general order of reference in force in all districts [*see* 28 U.S.C. §157(a)], this authority is transferred to the bankruptcy court.

-3-

conferred by §105(a) to enforce the provisions of the Standing Order by granting the relief the Trustee seeks. It is also clear that the overpayment or, more precisely, the improperly expedited payment of the Niebuhrs' attorney fees was effected by the Trustee's office and, consequently, constituted noncompliance by the Trustee with the Standing Order. Such noncompliance potentially subjects the Trustee to a finding of civil contempt and the imposition of sanctions.[2]

Trustee's Memorandum makes reference to two other cases in which case administration difficulties arose as a result of the Trustee's failure to comply with the Standing Order.

In the case of <u>Lola Latrice Harris</u>, No. 07-70176, attorney fees were paid in a manner noncompliant with the Standing Order. Correspondence from the Trustee's office dated October 19, 2007, to counsel for a creditor in the <u>Harris</u> case stated: "It has been standard to pay attorney fees within the first year by dividing the amount by 12 . . .". This statement clearly indicated that the Trustee's office policy and practice was in willful noncompliance with the provision in the Standing Order regarding payment of

---

[2]

The power of contempt is inherent in all courts, as the ability to enforce orders is essential to the orderly administration of justice. *See* <u>Shillanti v. U.S.</u>, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); <u>In re GGSI Liquidation, Inc.</u>, 351 B.R. 529, 585 (Bankr. N.D. Ill. 2006), *amended* 355 B.R. 691 (Bankr. N.D. Ill. 2006). Bankruptcy courts can impose sanctions and make findings of civil contempt. <u>In re Andreas</u>, 373 B.R. 864, 873 (Bankr. N.D. Ill. 2007) (citations omitted).

attorney fees.  The problem was resolved over time in the <u>Harris</u> case when the Trustee adjusted the manner in which creditors and counsel in the case were paid.

In the case of <u>Brandan and Shannon DeShasier</u>, No. 06-71664, a Final Report filed on October 29, 2007, demonstrated similar noncompliance.  Debtors' counsel had been paid far more than he should have at the time the case was converted and the Final Report was filed.  The problem was resolved in the <u>DeShasier</u> case because Debtors' counsel voluntarily returned a portion of the fees paid to him by the Trustee.

Because the issues relating to payment of attorney fees in both the <u>Harris</u> case and the <u>DeShasier</u> case were resolved without formal action by the Court, this case presents the first instance in which the Court has been requested by the Trustee to order turnover of funds paid voluntarily by him to Debtors' counsel.[3]

Trustee has referred to software and/or programming difficulties which have caused his office to deviate from the provisions of the Standing Order, although the October 19, 2007, correspondence in the <u>Harris</u> case is counterindicative of this

---

[3]      On page two of his Memorandum of Law, the Trustee states that the Court "enter(ed) orders as to the Trustee's payments of debtors' attorneys and creditors in the Harris and the DeShasier cases. . . ."  While the Court entered orders in <u>Harris</u> on October 23, 2007, and in <u>DeShasier</u> on November 1, 2007, seeking explanation as to why the Standing Order was apparently being violated, no substantive orders expressly or tacitly authorizing or requiring turnover under these circumstances have ever been entered by this Court in any case.

assertion.  In his Supplement filed in the <u>Harris</u> case on October 29, 2007, Trustee indicated that he was "hopeful" that a new approach would solve his previous distribution problems.

"Hope springs eternal. . ."[4] but, apparently, the problem persists, and the Court has very serious concerns as to whether the Trustee is being "reasonably diligent and energetic in attempting to accomplish what was ordered."  <u>Stotler & Co. v. Able</u>, 870 F.2d 1158, 1163 (7th Cir. 1989) (citation omitted)(discussing the standards for holding a party in civil contempt).

It is the Trustee's responsibility to see to it that payments distributed through his office are made pursuant to the terms of confirmed plans and in compliance with the Standing Order.  This Court is cognizant of the fact that the monthly allocation and distribution of debtor payments in full compliance with the terms and provisions of (i) a confirmed plan, (ii) the Standing Order, and (iii) the Bankruptcy Code may present a challenge to the Trustee.  Accordingly, this Court expects substantial compliance with the Standing Order but acknowledges that, as a practical matter, *de minimus* deviations may be necessary from time to time. The deviations which occurred in <u>Harris</u> and <u>DeShasier</u> were not *de minimus*.  The amount at issue here - $35.61 - is modest, but the Trustee apparently does not consider it *de minimus* or he would not

---

[4]      Alexander Pope, *An Essay on Man, Epistle I*, 1733.

-6-

have brought his Motion.   Further, all of the information before the Court suggests that the problems with the Trustee's payment of attorney fees in this case and in <u>Harris</u> and <u>DeShasier</u> are the result of the Trustee's knowing disregard of the Standing Order rather than the result of a good faith effort to balance the competing directives of a confirmed plan, the Standing Order, and the Code.

Although it is clearly within this Court's discretion to order turnover under the circumstances presented here, this Court finds no basis to do so when, for whatever reason, the Trustee persists in utilizing a process which does not ensure substantial compliance with the Standing Order.   The mistake here arose from systemic flaws in the Trustee's case administration process and the solution to these difficulties must come from the Trustee's office. The Niebuhrs had no role in calculating the periodic amounts paid to them and bear no responsibility for the problem.   For these reasons, the Trustee's Motion to Require Turnover of Funds is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###